Charlynn C. MANIATAS, Plaintiff,

v.

The NEW YORK HOSPITAL–CORNELL MEDICAL CENTER, and Cornell University Medical College, Defendant.

No. 97 Civ. 6112(SHS).

United States District Court,
S.D. New York.

July 26, 1999.

222

Donald F. Schneider, Feltman, Karesh, Major & Farbman, New York City, for Chalynn C. Maniatis.

Barbara E. Hoey, Kelley Drye & Warren, New York City, for The New York Hospital–Cornell Medical Center.

Nelson Eugene Roth, Cornell University Associate University Counsel, Ithaca, NY, for Cornell University Medical College.

## OPINION

STEIN, District Judge.

Charlynn Maniatis alleges in this action against Cornell University Medical College ("Cornell") that Cornell improperly terminated her employment due to her age.[1] Her complaint alleges that Cornell's decision not to renew her employment violated various federal, state, and local laws, including: (i) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.;* (ii) the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.;* (iii) the New York State Human Rights Law ("NYSHRL"), as amended, New York Executive Law § 296 *et seq.;* and (v) the Administrative Code of the City of New York, § 8–107 *et seq.* Cornell now moves for summary judgment dismissing the complaint. Because

---

1. Although the complaint alleges discrimination based on both age and sex, plaintiff has withdrawn her sex discrimination claim. Plaintiff's Memorandum of Law at 2 n. 1. Accordingly, only the age discrimination claim remains for consideration. In addition, although plaintiff also originally named New York Hospital–Cornell Medical Center as a defendant, she subsequently withdrew those claims. (Exhibit D to Affidavit of James Kahn).

she has not introduced any evidence that raises a triable issue of fact, defendant's motion is granted.

## I. Background

Dr. Charlynn Maniatis is a physician with a specialty in radiology. After receiving a J.D. degree from Harvard Law School in 1972, she received degrees in medicine and public health from The Johns Hopkins University in 1979. (Ex. A to Plaintiff's Affidavit). From 1980 to 1983, she received further training in diagnostic radiology at the Memorial Sloan–Kettering Cancer Center and the New York Hospital. *Id.* In July 1983, she began to work part-time for defendant Cornell Medical College as a radiologist. *Id.* Cornell Medical College, now known as Weil Medical College, is the medical school of Cornell University, whose main campus is in Ithaca, NY. (Defendant's Statement of Facts, ¶ 1). The New York Hospital, now known as New York Presbyterian Hospital, is the primary teaching hospital affiliated with Cornell. (Defendant's Statement of Facts, ¶ 2).

During the 1980's, Maniatis gradually increased the amount of time she worked for Cornell, first changing from one day to two days per week during the mid 1980's, and then adding additional early-morning hours during the late 1980's or early 1990's. (Plaintiff's Affidavit at ¶¶ 13, 16). During this time, she also worked part-time at other hospitals. (Plaintiff's Affidavit at ¶ 14). By 1985, she was appointed to work 60% of full-time, which is denominated by defendant as .6 FTE. (Sostman Affidavit ¶ 18). In 1987, she started her own private radiology practice, and continued to work part-time at Cornell. (Exhibit A to Plaintiff's Affidavit). During all relevant times after 1987, she maintained this private practice. *Id.*

Plaintiff continued working these hours at Cornell until 1995, when Cornell hired Dr. Dirk Sostman to become the new chair of the Department of Radiology. (Sostman Affidavit ¶ 6). In July of 1995, plain-tiff was reassigned from inpatient to outpatient radiology. (Ex. D to Plaintiff's Affidavit). In late 1995, Sostman became aware that plaintiff was working approximately 13 hours per week, fewer hours than her .6 FTE appointment called for, and notified her of his concerns in a letter dated December 16, 1995. (Exhibit I to Affidavit of James Kahn). In this letter, Sostman requested that plaintiff either work more hours or reduce her appointment level to 40%, or .4 FTE. *Id.* Sostman and plaintiff discussed her workload, and, in a letter dated January 4, 1996, plaintiff made several suggestions about increasing the amount of work available to her in the early morning hours. (Ex. K to Kahn Affidavit). Around this time, Dr. Sostman reorganized the department, shifting from a "modality based" system in which physicians were grouped according to the technology they used, to an "organ-based" system, in which physicians were grouped by bodily region (abdomen, limbs, etc.). (Sostman Affidavit 14). As a result of this reorganization, the general radiology group to which Dr. Maniatis belonged was dissolved and its responsibilities were divided up among the new groups. *Id.*

In a letter dated June 20, 1996, plaintiff was informed that her appointment would not be renewed after the end of 1996. (Ex. M to Kahn Affidavit). Plaintiff was 46 at the time of her termination. She filed an administrative claim with the Equal Employment Opportunity Commission ("EEOC"), which dismissed her claim, but issued a "right to sue" letter on June 6, 1997. (Ex. C to Kahn Affidavit). This action followed.

## II. Discussion

### A. *Standard of Review*

A motion for summary judgment is granted only where there are no genuine issues of material fact and the moving party is entitled, based on uncontested facts, to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Grady v. Affiliated Cent.,*

*Inc.*, 130 F.3d 553, 558 (2nd Cir.1997). In examining the record, all ambiguities and permissible factual inferences will be resolved in favor of the non-moving party. *See Grady*, 130 F.3d at 558. The standards for summary judgment are no different in employment discrimination cases than in any other type of litigation. *Fisher v. Vassar College*, 114 F.3d 1332, 1334 (2nd Cir.1997) (en banc.), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).

## B. *Disparate Treatment Claim*

Plaintiff's original complaint, both before the EEOC and in her pleadings in this action, claimed that defendants had intentionally discriminated against her by treating her disparately. A disparate treatment claim alleges that the plaintiff was intentionally discriminated against because of membership in a protected class, in this case, the class is all those 40 years of age and older. Such a claim under the ADEA is governed by the three-step procedure established for racial discrimination actions brought pursuant to the Civil Rights Act of 1964 in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See also, Fisher* 114 F.3d at 1335; *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2nd Cir.1994).

First, the plaintiff must establish a prima facie case by showing four elements: 1) that she belongs to a protected class; 2) that she was qualified for the job in dispute; 3) that she was subject to an adverse employment decision; and 4) that the adverse employment decision occurred under circumstances that give rise to an inference of discrimination. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2nd Cir.1995); *Woroski*, 31 F.3d at 108; *Spence v. Maryland Casualty Co.*, 995 F.2d 1147, 1155 (2nd Cir.1993). *See also, McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If a plaintiff meets this initial

burden and establishes a prima facie case, a rebuttable presumption of discrimination is created. *Id.* The burden of production then shifts to the defendant, who must articulate one or more legitimate, nondiscriminatory reasons for the termination. *McDonnell Douglas* 411 U.S. at 803, 804, 93 S.Ct. 1817. Once this burden has been met, the burden of persuasion falls upon the plaintiff to demonstrate that the employer's proffered reasons are merely a "pretext for discrimination." *McDonnell Douglas* 411 U.S. at 804, 93 S.Ct. 1817. *See also, St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).

This procedure is the same for the state and local claims under New York State law and New York City ordinance. "Age discrimination suits under the NYSHRL get the same analysis as claims under Title VII or the ADEA." *Lightfoot v. Union Carbide Corp.* 110 F.3d 898, 913 (2nd Cir.1997). *See Raskin v. Wyatt Co.*, 125 F.3d 55 (2nd Cir.1997); *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1177 (2nd Cir.1996); *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180 (2nd Cir.1992), *cert. denied*, 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Therefore, the analysis for plaintiff's ADEA claim is identical to the analysis for her state and local claims.

### 1. *The Prima Facie Case*

Plaintiff has met her burden of establishing a prima facie case. Cornell properly concedes that she belongs to a protected class (i.e., she is 40 or over) and that she was subject to an adverse employment decision (i.e., she was terminated). Cornell does, however, dispute that plaintiff was qualified for the job, maintaining that Dr. Maniatis lacked the necessary skills to perform certain techniques in the new, reorganized woman's imaging department, specifically computerized tomography ("CT"), magnetic resonance imaging ("MRI"), and breast biopsy techniques. Plaintiff responds that she had in fact been trained in those technologies during her residency at

the New York Hospital, and that she had worked at Cornell for thirteen years with neither complaint nor comment.

■ Cornell also denies that the circumstances of her discharge could give rise to an inference of discrimination, since it denies that she was replaced by substantially younger workers. It claims that of the four radiologists hired immediately after plaintiff, one was substantially older, and a second was five years younger, making this doctor 41 at the time of plaintiff's termination. Therefore, Cornell suggests, plaintiff cannot show that she was replaced by a person not in the protected class. Plaintiff, however, claims that three of the four replacements were substantially younger than she, which could support an inference of discrimination. (Plaintiff's Affidavit ¶ 21 n. 3). *See also, O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). Accordingly, plaintiff has established the "de minimis" burden of a prima facie case under the *McDonnell Douglas* framework. *Fisher,* 114 F.3d at 1340 and n. 7.

### 2. *Non-discriminatory Reasons*

■ Because Dr. Maniatis has made out a prima facie case, the burden shifts to Cornell to offer legitimate, nondiscriminatory reasons for her termination. *Hicks,* 509 U.S. at 509, 113 S.Ct. at 2748; *Fisher,* 114 F.3d at 1335. Cornell must articulate a reason that "if true, would connote lawful behavior," *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2nd Cir.1998), and it has done so. Cornell claims that plaintiff was terminated because she was part-time and, due to her private practice, her hours were inflexible; because she was not contributing to the department's teaching and research mission; and because she was not adequately trained in the technologies Cornell now requires for employment in its newly reorganized radiology department. Each of these reasons would alone be a legal and sufficient reason to terminate an employee. Therefore Cornell has

set forth legitimate and non-discriminatory reasons for its decision to terminate its employee. Pursuant to *McDonnell Douglas,* the burden now returns to plaintiff to raise a triable question of fact about whether defendant's asserted reasons are a pretext for discrimination. 411 U.S. at 804, 93 S.Ct. at 1825; *Hicks* 509 U.S. at 510–11, 113 S.Ct. at 2749; *Fisher* 114 F.3d at 1336.

### 3. *Pretext for Discrimination*

■ Plaintiff asserts that Cornell's reasons are pretextual. To survive summary judgment, however, plaintiff's burden is not merely to show that the proffered reasons are pretextual, but that the reasons offered are a pretext for discrimination. As the U.S. Supreme Court wrote in *Hicks,* "[a] reason cannot be proved to be a 'pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." 509 U.S. at 515, 113 S.Ct. at 2752 (quoting *Burdine* 450 U.S. at 253, 101 S.Ct. 1089) (emphasis in original). *See also, Fisher* 114 F.3d at 1337. Therefore, for plaintiff's claim to survive summary judgment, she must raise a triable issue of fact as to whether Cornell acted with discriminatory intent. Plaintiff has introduced no evidence of discriminatory intent on Cornell's part. The record reveals no derogatory comments, no incriminating writings, no witnesses who attest to defendant's improper intent.

■ Plaintiff relies solely on the statistical evidence of Harriet Zellner, Ph.D. Dr. Zellner analyzed terminations in Cornell's radiology department over an eighteen-month period after Dr. Sostman became chief of radiology. She concluded that there was a statistically significant correlation between doctors terminated and doctors age 40 and above. (Ex. Q to Kahn Affidavit ("Zellner Report")). She found that doctors over age 40 were terminated at a rate greater than chance alone would predict. *Id.* Dr. Zellner acknowledges, however, that the statistical evidence is

insufficient to establish intent. (Zellner Declaration ¶ 10; *See* Zellner Deposition at 60–61). The statistically significant correlation the Report claims for its study involves the Fisher Exact test, which does not control for any variables other than age and termination rate. *Id.* Any correlation indicated by this test is irrelevant to the question of causation or motive. Dr. Zellner herself testified at her deposition that "[a] disparate treatment claim should be tested in a multivariate framework . . ."; i.e., one that controls for more than two variables. *Id.* As the test used in the Report does not conform to this standard, it has no probative value for the disparate treatment claim. *See Raskin v. Wyatt Co.* 125 F.3d 55, 67–68 (2nd Cir.1997); *See Also Sheehan v. Daily Racing Form, Inc.* 104 F.3d 940, 943 (7th Cir.1997). Without evidence of discriminatory intent, plaintiff's claim of disparate treatment fails.

## C. *Disparate Impact Claim*

In her Memorandum of Law in Opposition to Cornell's motion for summary judgment, plaintiff, for the first time, raises a disparate impact claim. A disparate impact violation occurs pursuant to the ADEA, 29 U.S.C. § 621 *et seq.*, when the actions or policy of a defendant have a disproportionate adverse effect on members of the protected class—in this case, workers over 40—even in the absence of discriminatory intent.

■ Cornell contends that because plaintiff did not raise this matter either in her pleadings or before the EEOC, this court has no jurisdiction to hear this claim. Although plaintiffs asserting employment discrimination claims must normally exhaust their remedies with the EEOC before their claims will be heard by a district court, *Butts v. City of New York Dept. of Housing,* 990 F.2d 1397, 1401 (2nd Cir. 1993), courts may make an exception for claims that are "reasonably related" to the allegations in the EEOC charge. *Gomes v. Avco Corp.,* 964 F.2d 1330, 1334 (2nd Cir.1992). Because plaintiff's claim under

a disparate impact theory is arguably "reasonably related" to her intentional discrimination claim, this Court will analyze this claim as well.

■ Disparate impact claims under the ADEA, like disparate treatment claims, are treated the same as claims under Title VII of the Civil Rights Act. *Fisher,* 114 F.3d at 1335. Plaintiffs must establish the existence of a non job-related but facially neutral employment practice that disproportionately causes adverse effects for a protected class at a statistically significant level. *See* 29 U.S.C. §§ 623, 626; *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *Griggs v. Duke Power,* 401 U.S. 424, 431–33, 91 S.Ct. 849, 853, 854, 28 L.Ed.2d 158 (1971). The classic example of this form of discrimination, found in *Griggs,* is a test which is unrelated to actual job performance, but is nonetheless administered to employees as a prerequisite for promotion and results in far fewer employees from a protected group being promoted into more attractive and lucrative jobs. 401 U.S. at 430, 91 S.Ct. 849.

■ Dr. Maniatis correctly asserts that statistical evidence is often the lynchpin of disparate impact claims, since it is the pattern that is being challenged, rather than a discrete discriminatory act. In that regard, plaintiff relies on the Zellner Report as proof of disparate impact. For the purposes of this decision, we assume that the Zellner Report would be admissible evidence, despite defendant's challenges to its data and methodology. However, evidence of statistical disparities is not the only element necessary to make out a claim. Plaintiff must identify a specific, facially neutral practice that results in the disparity:

> Our disparate-impact cases have always focused on the impact of *particular* hiring practices on employment opportunities. . . . As a general matter, a plaintiff must demonstrate that it is the application of a specific or particular employ-

**228**

ment practice that has created the disparate impact under attack. Such a showing is an integral part of the plaintiff's prima facie case under Title VII.

*Wards Cove,* 490 U.S. at 657–8, 109 S.Ct. at 2124–5 (emphasis in original). *See* 42 U.S.C. § 2000e–2(k)(1)(a)(i); *Watson v. Fort Worth Bank & Trust* 487 U.S. 977, 994, 108 S.Ct. 2777, 2788, 101 L.Ed.2d 827 (1988) ("The plaintiff must begin by identifying the specific employment practice that is challenged") (O'Connor, J, plurality opinion). Dr. Maniatis has not only failed to introduce any evidence of a facially neutral employment practice of defendant, she has failed even to identify or allege such a practice. Thus she has failed to establish that element of her claim.

■ In addition to identifying a specific practice that results in the discriminatory impact, a plaintiff in a disparate treatment action must demonstrate that there is a causal link between the challenged practice and the disproportionate outcome. *Wards Cove,* 490 U.S. at 656, 109 S.Ct. at 2124. Again, plaintiff has failed to allege any policy that resulted in the statistical imbalance to which the Zellner Report attests, and has therefore failed to demonstrate a causal link between any of Cornell's policies and this imbalance. Therefore, even assuming the Zellner report offers admissible evidence demonstrating that a disproportionate number of workers in the protected class have been let go by Cornell, plaintiff has failed to make out the other necessary elements of the claim. Accordingly, she has failed to raise a triable issue of material fact regarding her claim of disparate impact sufficient to defeat summary judgment.

III. *Conclusion*

Accordingly, because there is no disputed issue of fact in the record as to whether plaintiff was terminated because of her age, defendant's motion for summary judgment in its favor is granted.