**Paula R. CARDOZO, Plaintiff,**

v.

**HEALTHFIRST, INC., Defendant.**

**No. 98Civ.3050 RMB JCF.**

United States District Court,
S.D. New York.

Sept. 30, 1999.

David M. Fish, New York City, for Paula R. Cardozo.

Elissa Hutner, New York City, for Healthfirst, Inc.

### DECISION AND ORDER

BERMAN, District Judge.

The Plaintiff, Paula R. Cardozo ("Cardozo" or "Plaintiff"), brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(e) *et seq.*, the New York Executive Law § 290, *et seq.*, the New York State Human Rights Law, Chapter 1, Title 8 of the Administrative Code of the City of New York and, the New York City Human Rights Law claiming that she was passed over for a promotion and terminated from her job as a marketing executive by defendant, Health-first, Inc. ("Healthfirst" or "Defendant"), because of her gender. (*See* Complaint ("Compl.") ¶¶ 1, 9, 11.) Plaintiff seeks, among other things, an award of back pay, pre-judgment interest, fringe benefits, and legal costs and fees (Compl. ¶¶ B, C.) Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") **For the following reasons, defendant's motion is granted and the complaint herein is dismissed.**

### I. Background

Plaintiff was hired by the Defendant as Director of Marketing for Government Programs in January 1995. (Compl. ¶ 6.) Plaintiff alleges that she was denied a promotion to the position of Vice President of Marketing [1] and that the position was given to Gilbert Marchany ("Marchany") another employee of defendant, who is allegedly a less qualified man. (Compl. ¶ 9.) Plaintiff further alleges that she was terminated on January 21, 1997 because she is a female. (Compl. ¶¶ 10, 11.) Plaintiff also alleges that the Defendant has engaged in a pattern and practice of discrimination against women and has given men preferential treatment over Plaintiff, including giving men greater compensation, despite Plaintiff's (strong) qualifications. (Compl. ¶¶ 12–14.)

### II. Discussion

#### Standard for Summary Judgment

A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P.

---

1. According to the Affidavit of Winsome McFarlane ("McFarlane Aff."), Benefits Coordinator of Healthfirst, dated January 28, 1999, this position has been known by various titles including, Vice President for Government Programs Marketing and Customer Service; Vice President Government Programs and Vice President Marketing. (McFarlane Aff. ¶ 2). It is referred to herein as Vice President of Marketing.

56(c); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir.1993). The role of the court on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Knight v. United States Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The burden of showing the absence of a factual dispute rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996). In assessing the record to determine whether there is a genuine issue of material fact, the Court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Vann v. City of New York*, 72 F.3d 1040, 1048–49 (2d Cir.1995). Special caution should be exercised in granting summary judgment in employment discrimination cases:

> [W]hen deciding whether this drastic provisional remedy should be granted in a discrimination case, additional considerations should be taken into account. A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue. Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.

Finally, the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.

*Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994) (citations omitted).

A plaintiff may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Montana v. First Federal Savings & Loan Assoc. of Rochester*, 869 F.2d 100, 103 (2d Cir.1989). **Nevertheless, the plaintiff "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."** *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995) (citations omitted) (emphasis added). Rather, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Claims of discrimination under Title VII, such as the claims at bar, are analyzed in accordance with the three stage framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[2] In the first stage, the plaintiff must establish a *prima facie* case of dis-

---

**2.** Some courts suggest that this test is somewhat outdated and that the main focus of analysis should be on the ultimate issue, i.e. whether Plaintiff has proven that it is more likely than not that the employer discrimi-

nated. *McDonnell Douglas*, however, remains the governing law to be followed. *See, e.g., Peterson v. City College*, 32 F.Supp.2d 675, 684 (S.D.N.Y. Jan.21, 1999).

crimination by showing: (1) that she[3] is within a protected group; (2) that she applied for and was qualified for the job at issue;[4] (3) that she was subjected to an adverse employment action; and (4) that this action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell·Douglas*, 411 U.S. at 801, 93 S.Ct. 1817; *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1994). Because an employer that has engaged in discrimination is unlikely to leave a "smoking gun," *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994), a plaintiff usually must rely on "the cumulative weight of circumstantial evidence" when proving bias. *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir.1991).

Once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence "that the adverse· employment actions were taken 'for a legitimate, non-discriminatory reason.'" *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Despite this shift of the burden of production to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *see also St. Mary's Honor Center*, 509 U.S. at 507, 113 S.Ct. 2742.

If the defendant provides evidence of legitimate, non-discriminatory reasons for its action, the burden returns to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. A plaintiff opposing a motion for summary judgment "must produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the ˙employer were false," *Woroski*, 31 F.3d at 110, and "that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trustees of Columbia University in New York*, 131 F.3d 305, 312 (2d Cir.1997).

**Here, the plaintiff has not established a *prima facie* case and, even assuming that she had, she has not offered sufficient evidence of discrimination to establish pretext.**

## *Plaintiff's Discrimination Claims*

### *Jurisdiction*

█    Plaintiff Cardozo's claim appears to be two-fold: she alleges first that she was passed over for promotion and second that she was terminated, because of her gender.[5] (Compl.¶¶ 9, 11.). "A district court only has jurisdiction to hear Title VII claims that are either included in an [Equal Employment Opportunity Commission] EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dep't of Housing Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993); *see also Wilson v. Fairchild Republic Co., Inc.*, 143 F.3d 733, 739 (2d Cir. 1998); *Woodcock v. Montefiore Medical*

---

**3.** Or "he"

**4.** The second prong of this test in a discharge situation is whether plaintiff was qualified for the position. *See, e.g., Perry v. Manocherian* 675 F.Supp. 1417, 1423 (S.D.N.Y.1987).

**5.** The promotion and termination claims are analyzed herein.

*Center,* No. 98–CV–4420, 1999 WL 312123 at *2 (E.D.N.Y. March 11, 1999). "[C]ourts will not permit a claim that is based on a wholly different type of discrimination to be brought if it was not initially asserted in the EEOC charge." *Peterson v. Insurance Co. of North America,* 884 F.Supp. 107, 109 (S.D.N.Y.1995).

■ In Plaintiff's EEOC charge of discrimination, she alleged, among other things, that the male management in Defendant's marketing department were awarded salary increases, and bonuses and she was not. (*See* Plaintiff's letter addressed to the EEOC, dated April 23, 1997 ("Letter"), p. 2, annexed as Exhibit A· to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Opp'n.Mem."), dated January 27, 1999).[6] Plaintiff also complained· of colleague Gilbert Marchany's promotion to the position of Vice President of Marketing in November 1996. The Plaintiff stated, among other things, that she was more qualified than Mr. Marchany; that the position was not posted; and she was not asked to interview for the job. (Letter, pp. 3, 4.) Plaintiff also stated in the Letter that she was fired without cause. Thus, the Court finds that the claims herein were previously presented to the EEOC and, therefore, the Court has jurisdiction over the plaintiff's gender claims.

6. Defendant alleges that this Court does not have jurisdiction to hear this claim as the EEOC Charge of Discrimination, dated April 25, 1997, annexed as Exhibit 5 to Affirmation of Elissa Hunter, Esq., dated January 19, 1999, ("Hunter Aff.") in Support of Defendant's Motion for Summary Judgment, dated January 19, 1999, does *not* include the Letter dated April 23, 1997.

7. Unless otherwise indicated, the analysis herein applies to *both* the promotion and termination claims.

### Prima Facie Case

In presenting her Title VII claims, plaintiff has satisfied the first prong of the *McDonnell Douglas* test. Plaintiff is a member of a protected class because she is a female.[7]

■ Plaintiff has satisfied the second prong of the *McDonnell Douglas* test with respect to her claim of termination, *i.e.* plaintiff was qualified for the position she held.[8] Plaintiff has not, however, satisfied the second prong of the test with respect to her claim of failure to promote. Indeed, Plaintiff concedes that she did not apply for the position of Vice President of Marketing. (*See* Cardozo Aff. ¶ 9) (wherein Plaintiff states that she chose "not to actively pursue the now titled 'Vice President of Marketing ...' position at the time it became open."). She alleges, among other things, that she was "misled" into not applying for the position as it was initially titled Vice President of Medicaid Marketing. She claims that she was assured another position (at a higher level) would be given to her when it became available. (Opp'n. Mem. p. 10; Cardozo Aff.¶ 9) However, she admits in her examination before trial ("EBT") that she never told Paul Dickstein, who was the President and Chief Executive Officer of Healthfirst, that she was interested in the position.[9] *See* Examination Before Trial of Paula Cardozo ("Cardozo EBT"), dated July 14, 1998, p. 60 lines 10–12. Mr. Dickstein corrobo-

8. There is no dispute that plaintiff possessed the requisite qualifications for the position of Director of Marketing from which she was terminated.

9. Mr. Dickstein was "responsible for hiring, firing and setting the compensation packages for senior staff and upper level management." (Paul Dickstein's Affidavit in Support of Motion for Summary Judgment, dated December 30, 1998 ¶ 4 ("Dickstein Aff."))

rates the fact that Plaintiff never expressed an interest in the position, stating: "I met with Ms. Cardozo frequently during the time I was searching for a Vice President of Marketing. She knew the position was open, and yet not once did she ever mention any interest in the position to me." (Dickstein Aff. ¶ 17.)

Plaintiff's failure (even) to express an interest in the position of Vice President of Marketing is fatal to her *prima facie* claim. *See, e.g., Davis v. Bowes*, 1997 WL 655935 *6 (S.D.N.Y. Oct. 20, 1997), *aff'd*, 159 F.3d 1346, 1998 WL 477139 (2d Cir. 1998) ("alleging only a general interest in promotion and showing that members outside of the protected class eventually obtained promotion is not sufficient to state a prima facie claim under Title VII."); *Eldred v. Consolidated Freightways Corp.*, 898 F.Supp. 928, 938 (D.Mass.1995) (**"failure to apply formally for a job opening where there is no formal application process will not preclude a Title VII plaintiff from establishing a prima facie case, as long as the plaintiff made a reasonable attempt to convey her interest in the job to her employer"**) (emphasis added).

Relatedly, plaintiff has failed to demonstrate her particular qualifications for the position. Plaintiff's health care marketing and management experience and qualifications relating to government programs are not in dispute. She was initially hired "because of her prior experience in developing a marketing program for medicare." (Dickstein Aff. ¶ 7.) "Ms. Cardozo's experience in developing a start-up marketing strategy for Medicare was the strongest point in favor of her hire." *Id.* Ms. Cardozo was responsible for "help[ing] to carry out a marketing strategy for Medicaid ... and ... develop[ing] and implement[ing] a marketing strategy for Medicare" once [Healthfirst obtained its Medicare license]. *Id.*, at ¶ 6.[10]

Plaintiff stated that she did not know what the qualifications for the position of Vice President of Marketing were. (*See* Cardozo EBT, p. 66, lines 4–11 Q: "Do you know what the requirements of the position were?" A: "It was never stated to me what the requirements were." Q: "So you don't know if you had more qualifications, do you? You don't know what the qualifications were?" A: "No.").[11]

The third prong of the *McDonnell Douglas* test is satisfied in that plaintiff was subject to an adverse employment action when she was passed over and when she was terminated. *See, e.g., Ansley v. Varsity Transit*, 1999 WL 672526 *5 (S.D.N.Y. Aug. 26, 1999) ("[H]is termination constituted and adverse employment action.")

█ The fourth prong of the *McDonnell Douglas* test is, arguably, met by Plaintiff in that there is some evidence from which it could reasonably be inferred

---

**10.** As of January 1997, Healthfirst was approximately one and one half years away from obtaining its Medicare license. (Dickstein Aff. ¶ 27)

**11.** According to Paul Dickstein, the necessary qualifications for the position included the following:

[G]eneral knowledge of health care marketing and sales ... strength in recruitment and training of the field staff ... skills in motivating the sales force ... analytical capabilities to determine the best deployment of staff in order to ensure the maximum productivity of the sales force ... [capability] of evaluating the effectiveness and value of continued marketing strategies such as advertising, events and promotions. (Dickstein Aff. ¶ 20)

Plaintiff has not alleged that she possessed these qualifications. Therefore, Plaintiff has not satisfied the second prong of the *McDonnell Douglas* test.

that Plaintiff's failure to obtain a promotion and her ultimate termination were based on discrimination.[12] "The plaintiff's burden at this stage is less onerous than the conventional obligation to produce evidence that reasonably supports a finding on all the elements of the claim." · *See Marks v. New York University* 61 F.Supp.2d 81, 92–93 (S.D.N.Y.1999) (an inference of discrimination was shown where plaintiff alleged, among other things, that the dean suggested meeting plaintiff on at least two occasions at the dean's apartment and plaintiff provided evidence that the dean ignored plaintiff and other women and made derogatory comments, *e.g.* referring to women as being "too aggressive", or as "cutie", "sweetie" or "perky"). *See also Meng v. Ipanema Shoe Corporation,* 73 F.Supp.2d 392, 398–99 (S.D.N.Y. 1999) (where an inference of discrimination was shown where four of seven employees terminated were minorities; where the possibility existed that plaintiff's accent may have played a part in her termination; and where within one year of plaintiff's termination, two new employees were hired, one of whom was caucasian.).

.Plaintiff's (prima facie) evidence of discrimination includes, among other things, her affidavit and an affidavit by Lynn Adams, a former associate general counsel of Healthfirst.[13]

Plaintiff alleges in her Affidavit, dated January 26, 1999, annexed as Exhibit A to David Fish's Affirmation in Opposition to Defendant's Motion for Summary Judgment, dated January 26, 1999, ("Cardozo Aff.") that when Marchany began at Healthfirst, women were treated as "lower class"; she says they (women) were excluded from decision making processes at Healthfirst and were unduly harassed. (*Id.,* ¶ 3.) Plaintiff claims Marchany treated women as inferior; did not look at them when he spoke to them; and often used profanity directed towards women. (*Id.,* ¶ 4.)

The Lynn Adams Affidavit, dated August 28, 1998, ("Adams Aff.") states, among other things, the following "I perceived a pattern and practice of discrimination against women." (Adams Aff. ¶ 4.) "In the few instances in which women were actually promoted to positions of authority, they earned less money than men possessing the same level of seniority and

12. Assuming, arguendo, that she had applied for the position and established her credentials, which, as noted, she had not done.

13. Plaintiff also includes in her responsive papers, as Exhibit E annexed to the Affirmation of David Fish in Opposition to Defendant's Motion for Summary Judgment, dated January 26, 1999 ("Fish Aff."), a copy of a complaint filed on or about June 10, 1997 by Doris Ellis Jackson with the New York State Division of Human Rights which alleges that Ms. Jackson was harassed by her immediate supervisor Allan "Doe" and her co-workers. According to the complaint, Ms. Jackson complained to Marchany. Marchany allegedly held a meeting to handle the situation and, thereafter, took no further action.

Additionally, Plaintiff includes as Exhibit F to the Fish Aff., a complaint filed on or about December 31, 1997 by Gwendolyn Ward with the EEOC which alleges that Marchany felt her buttocks. Plaintiff has not included affidavits from either of these individuals in support of her position here, nor is the disposition of these third party claims known or asserted herein. This Court is not considering the contents of these complaints as proof of discrimination. *Cf. Bratek v. Merck* 1993 WL 124747 at *6 (W.D.N.Y. April 16, 1993) (unsubstantiated allegations made by plaintiff that defendant mistreated other subordinates did not constitute evidence of defendants alleged discriminatory actions); *Campbell v. Higgins* 1994 WL 584714 at *1 (W.D.N.Y. Oct. 12, 1994), *aff'd,* 57 F.3d 1063 (2d Cir.1995) ("[A] court cannot ignore the rule that unsubstantiated .allegations do not constitute evidence."), *Ansley v. Varsity Transit,* 1999 WL 672526 at .*6 (S.D.N.Y. Aug. 26, 1999) ("Grousing is not proof.").

expertise." (*Id.,* ¶ 5.) "The supervisory staff had an aversion to strong, intelligent women." (*Id.,* ¶ 6.)

Based upon the above facts, Plaintiff has arguably satisfied the fourth prong of the *McDonnell Douglas* test that there is an inference of discrimination with regard to the alleged adverse employment actions.

### Defendant's Non–Discriminatory Explanation

### No Promotion

■ The position of Vice President of Marketing was vacated when the then current job holder was reassigned to another position. A search, which lasted for seven months, was undertaken in April 1996. (Dickstein Aff. ¶¶ 15, 23) Plaintiff neither applied for the position nor expressed an interest in it. (Id., ¶ 17.) Plaintiff was aware of the position and, in fact, was involved in interviewing potential candidates for the position. (Cardozo EBT, p. 64, lines 2–10 and p. 61, lines 21–23.) During the search period, Marchany, who ultimately got the job and who had extensive experience in sales/marketing and supervision, *see* Exhibit 1 of Reply Affirmation Support of Summary Judgment for Defendant, dated January 29, 1999, was "performing substantially all the tasks and responsibilities the new Vice President was to undertake." (Dickstein Aff. ¶ 21.) Under Marchany's leadership "the number of new enrollments was steadily increasing and [Healthfirst] frequently exceeded the number of new members enrolled by many of [their] competitors." (Id.) The decision to give Marchany the position was based upon his "outstanding performance in the position ..." (Id., ¶ 25.) Thus, Defendant offers evidence that its decision was not discriminatory, but rather that it selected Marchany as the most qualified person for the position.

### Termination

Defendant maintains that, in early 1996, it became apparent that selling/marketing of Medicaid health services (*i.e.* Plaintiff's principle responsibility) was essentially a retail business and that a greater emphasis should be placed by Healthfirst on direct sales. (Dickstein Aff., ¶ 11.) The budget for 1997 was (drastically) reduced as a result of this shift in business emphasis. The Plaintiff's position also became less significant to Healthfirst. (Id., ¶¶ 13 and 14.)

■ The decision was made to terminate Plaintiff's position for the following reasons, among others: (i) the Company's medicare license would not be approved for approximately one and one half years and, therefore, the area of Plaintiff's greatest expertise could not predominate until some time in the (distant) future; (ii) the marketing aspect of Healthfirst's business (*i.e.* Plaintiff's area) was being de-emphasized vis-a-vis the sales aspect which was being strengthened; (iii) the marketing manager was able to handle day-to-day affairs; and (iv) by cutting the Plaintiff's position, a savings of at least $80,000 (annually) could be made. (*See* Defendant's Statement pursuant to Local Rule 56.1, dated January 20, 1999, ¶¶ 29–33.) Thus, Defendant offers evidence that the decision to terminate Plaintiff was made for several business related (*i.e.* non-discriminatory) reasons. "It is not the function of this Court to second-guess an employer's business decisions." *Meng,* 73 F.Supp.2d at 399.

### Establishing Pretext

■ In view of Defendant's non-discriminatory showing (explanations) for the failure to promote Plaintiff and for her termination, the burden shifts back to Plaintiff to establish pretext for the promotion of Marchany and for her termination. *See*

*Hollander v. American Cyanamid Co.,* 172 F.3d 192, 200 (2d Cir.1999), *petition for cert. denied,* 528 U.S. 965, 120 S.Ct. 399, 145 L.Ed.2d 311, 68 U.S.L.W. 3138 (1999). *See also Burdine,* 450 U.S. 248, 101 S.Ct. 1089 (1981); *Stern,* 131 F.3d at 312. Plaintiff Cardozo does not meet this burden. With respect to her not being promoted, the principal showing by Plaintiff is that Marchany, a male, was given the position. The support for her claim is conclusory and speculative and does not rest upon concrete evidence (either direct or circumstantial). Plaintiff asserts, without proof, that Marchany "had absolutely no prior experience in marketing, and absolutely no prior experience in health care." (Opp'n.Mem., p. 3.). Plaintiff also states: "[I]f sex was not taken into account, Mr. Dickstein would have simply placed me in the position (as he did Mr. Marchany), knowing full well I was more qualified than Mr. Marchany, if sex was not taken into account." Cardozo Aff. ¶ 10. And, when asked at her deposition why she assumed a vice president's job would be available to her, Cardozo replied, "I was worth it." (Cardozo EBT p. 62, line 21.) Similarly, the Adams Affidavit adds no hard evidence. Ms. Adams says she merely "perceived" a pattern and practice of discrimination. (Adams Aff. ¶ 4.) [14]

Plaintiff has failed to rebut Defendant's non-discriminatory reasons for her non-promotion. Plaintiff does not even address the fact that Marchany (during the period of the job search) was basically

performing the Vice President role. *See Sprott v. Franco,* 1997 WL 79813 at *14 (S.D.N.Y. Feb. 25 1997) (where the court stated: "Plaintiff has utterly failed to present any evidence to rebut defendants' legitimate, non-retaliatory reason for transferring plaintiff. In her opposition brief to defendants' motion, she has not even presented an argument to rebut defendants' proffered explanation.").

▮ Nor has Plaintiff been able to rebut Defendant's non-discriminatory reasons for her termination. She cites the following as evidence of discrimination: Marchany's treatment of her which included disinterest, mumbling and looking down when speaking (as opposed to eye-to-eye contact)(Cardozo EBT, pp. 73, 74, lines 22–25, 1–7.). **When asked: "Did he ever say anything to you that could be termed in any sense ... as a discriminatory comment or negative comment because you were a woman?" Plaintiff responded: "I don't recall."** (Cardozo EBT, p. 75, lines 2–6.) "[I]t is obvious that Mr. Marchany convinced Mr. Dickstein to have me fired (as he did Dr. Joanne Coles Rivers so he could move into her position) because he did not like to work with women who are equals." (Cardozo Aff., ¶ 12.) Plaintiff does not address, in any sense, the budget issue as one of several determining facts in her termination. Plaintiff has utterly failed to rebut Defendant's legitimate non-discriminatory reason for the termination.

---

14. The evidence supplied by Defendant is much stronger: Marchany had prior experience and was successfully performing substantially of all the tasks required for the position of Vice President of Marketing. Defendant also submitted as Exhibit 1 to the Affidavit of Paul Dickstein in Support of Motion for Summary Judgment, dated December 30, 1998, a list of starting salaries of the directors employed at the same time as the Plaintiff. Of the nineteen individuals on the list, ten were female and nine were male. The females earned the following salaries: $80,000; $75,000; $45,000; $80,000; $60,000; $76,500; $70,000; $80,000; $80,000; and $65,000. The males earned the following: $92,000; $80,000; $53,000; $68,100; $55,000; $80,000, $70,000; $70,000 and $55,000. The average salary for the females was $71,150; the average salary for the males was $69,233.33.

■ Conclusory allegations made by the Plaintiff of (alleged) discriminatory conduct are insufficient to avoid summary judgment. *See Payne v. State of New York Power Authority,* 997 F.Supp. 492, 499 (S.D.N.Y.1998), *aff'd.,* 173 F.3d 845, 1999 WL 197196 (1999). ("[P]laintiff repeatedly testified at her deposition that the bases of her discrimination claim were the allegedly inaccurate performance reviews, her demotion, and her subjective, unparticularized belief that she is an African–American. Plaintiff admits that she neither heard nor observed anything to indicate ... [that defendants] harbored racial animus or had ever treated anyone differently because of race. Plaintiff cannot point to any statement or action associated with [defendant] which indicates that plaintiff was treated differently because of her race.") "The creation of a genuine issue of fact with respect to pretext alone is not sufficient. There must also be evidence that would permit a rational fact finder to infer that the discharge was actually motivated, in whole or in part, by discrimination ..." *Grady v. Affiliated Central, Inc.,* 130 F.3d 553, 561 (2d Cir. 1997), *cert. denied* 525 U.S. 936, 119 S.Ct. 349, 142 L.Ed.2d 288 (1998). In *Grady,* the plaintiff was unable to point to any statement by anyone that was discriminatory in nature. "[S]he could only say that Bacolas smiled at her less approvingly as Grady's tenure ... wore on." *Id.*

In support of her discrimination claim, Plaintiff alleges that two women employees complained to her of foul language used by Marchany toward them (Cardozo EBT p. 76, line 15). On one occasion, Plaintiff heard Marchany call another woman a "bitch." (Cardozo EBT p. 75, lines 11–12.) However, as in *Marks,* 61 F.Supp.2d 81 (S.D.N.Y.1999), plaintiff has only asserted (and not produced evidence of) discrimination. *Id.,* at 99–100 (where there are only assertions and no evidence of discriminatory conduct, *i.e.* stray remarks directed not at plaintiff but at other women, and legitimate reasons are provided for each employment action, the alleged remarks provide an insufficient basis for plaintiff to present her case to the jury). *See also Renz v. Grey Advertising, Inc.,* 135 F.3d 217, 224 (2d Cir.1997) (isolated remarks not directed at plaintiff do not establish discrimination when evidence of non-discriminatory reason for job action is strong); *Offutt v. Gannett Satellite Info. Network, Inc.,* 1998 WL 872443 at *3 n. 1 (S.D.N.Y. Dec. 14, 1998) (noting that stray remarks are generally insufficient); *Tomka,* 66 F.3d at 1306 n. 5 ("isolated remarks or occasional episodes of harassment will not merit relief under Title VII.").[15]

Thus, Plaintiff has failed to prove by a preponderance of the evidence that Defendant's legitimate, non-discriminatory reasons for failing to promote and terminating Plaintiff were a pretext for discrimination.

---

**15.** Plaintiff has not alleged a cause of action as to a hostile work environment. If she had, such claim would likewise fail. "The law does not require an employer to like his employees, or to conduct himself in a mature or professional manner, or unfortunately, even to behave reasonably and justly when he is peeved." *Christoforou v. Ryder Truck Rental, Inc.,* 668 F.Supp. 294, 303 (S.D.N.Y.1987). "Although the alleged comments are despicable and offensive, they fail to constitute discriminatory behavior that is sufficiently severe or pervasive to cause a hostile work environment." *See Brown v. Coach,* 163 F.3d 706, 713 (2d Cir.1998); *see also LaCoparra v. Pergament Home Centers, Inc.,* 982 F.Supp. 213, 225 (S.D.N.Y.1997) (remarks made without a demonstrated nexus to an employees termination, are insufficient to create a material factual issue to defeat summary judgment). *See Meckenberg v. New York City Off-Track Betting,* 42 F.Supp.2d 359, 373 (S.D.N.Y.1999) (allegations that fellow employees called plaintiff a "pain in the ass" and a "bitch" are insufficient to establish a hostile workplace.)

*See Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. Accordingly, Plaintiff's claims under Title VII are dismissed.

### State Claims

■ The Court declines to exercise supplemental jurisdiction over Plaintiff's alleged state law claims in light of the dismissal of all of the Plaintiff's Federal causes of action. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 ("in the usual case in which all Federal law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state law claims."); *See also DiLaura v. Power Authority,* 982 F.2d 73, 80 (2d Cir. 1992) (finding that the district court did not abuse its discretion by relinquishing jurisdiction over supplemental state claim after Federal claims were dismissed); 28 U.S.C. § 1367(c)(3) (codifying existing case law and giving district courts discretion to decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction ...").

### Conclusion

For the reasons set forth above, the Defendant's motion for summary judgment is granted. The Clerk of Court is respectfully directed to enter judgment dismissing the complaint.