**Jaoquina T. IUORNO, Plaintiff–Appellant, .**

v.

**DUPONT PHARMACEUTICALS COMPANY, Defendant–Appellee.**

No. 04–2049.

United States Court of Appeals, Second Circuit.

Jan. 31, 2005.

Benjamin F. Cardinez (Jason B. Cardinez, on the brief), New York, New York, for Appellant.

Jeremy M. Brown (Bettina B. Plevan and Jody S. Riger, on the brief), Proskauer Rose LLP, New York, New York, for Appellee.

PRESENT: Honorable REENA RAGGI, Honorable RICHARD C. WESLEY, Circuit Judges, Honorable CHRISTOPHER F. DRONEY,[1] District Judge.

---

1. The Honorable Christopher F. Droney, of the United States District Court for the District of Connecticut, sitting by designation.

## SUMMARY ORDER

Plaintiff-appellant Jaoquina Iuorno, a sixty-two-year-old native of the Philippines, submits that the district court erred in awarding summary judgment to defendant-appellee DuPont Pharmaceuticals Company ("DuPont")[2] on her claims of employment discrimination based on race and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2—2000e–17, and 42 U.S.C. § 1981, and also based on age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634.[3] We assume the parties' familiarity with the facts and the record of proceedings, which we reference only as necessary to explain our decision.

We review an award of summary judgment de novo, and we will affirm only if the record, viewed in the light most favorable to the non-moving party, reveals "no genuine issue as to any material fact" but supports a conclusion that "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir.2003) (and cases cited therein).

Motions for summary judgment on federal employment discrimination claims are generally reviewed pursuant to the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (Title VII); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (§ 1981);[4] *Terry v. Ashcroft*, 336 F.3d at 138 (ADEA). Although DuPont disputes the district court's conclusion that Iuorno satisfied the "de minimis" first step of establishing a prima facie case, *see Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir.2001), we need not address that argument because we conclude, as did the district court, that Iuorno's case fails at the third step, i.e., the record as a whole would not permit plaintiff, as a matter of law, to satisfy her "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated" against her based on race, national origin, or age, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *see Terry v. Ashcroft*, 336 F.3d at 138; *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 103 (2d Cir.2001);

---

**2.** On October 1, 2001, DuPont Pharmaceuticals Company was acquired by Bristol–Myers Squibb Company. Because neither party has sought to amend the caption to reflect this change, we refer to defendant by its former name, DuPont, as did the district court.

**3.** On appeal, Iuorno does not challenge the district court's award of summary judgment in favor of DuPont on her claims of employment discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12111–12117, and New York State Human Rights Law, N.Y. Exec. L. § 279; violations of the Occupational Health and Safety Act, 29 U.S.C. §§ 651–678; and breach of contract under New York common law. Accordingly,

we deem these claims waived. *See Graham v. Long Island R.R.*, 230 F.3d 34, 41 (2d Cir. 2000).

**4.** We note that *Patterson* was superseded in part by the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (amending 42 U.S.C. § 1981). *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372, 124 S.Ct. 1836, 1840, 158 L.Ed.2d 645 (2004). With regard to the *McDonnell Douglas* framework's applicability to employment discrimination claims under § 1981, however, *Patterson* retains its precedential authority. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 506 n. 1, 113 S.Ct. 2742.

*Schnabel v. Abramson,* 232 F.3d 83, 90 (2d Cir.2000).

DuPont asserts that it terminated Iuorno for a non-discriminatory reason; specifically, in September 2000, while working as a chemist in the company's Finished Products pharmaceutical laboratory, Iuorno committed numerous, serious violations of both the company's standard operating procedures and regulations mandated by the Food and Drug Administration ("FDA"). Although Iuorno conclusorily dismisses these violations as harmless, the record plainly evidences the legitimacy of her employer's concern. *See Dister v. Cont'l Group, Inc.* 859 F.2d 1108, 1116 (2d Cir.1988) (noting that "it is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal"). On two separate occasions in mid-September 2000, Iuorno violated operating procedures and FDA regulations mandating that all chemists' test calculations be recorded when performed and only in pre-serialized, bound laboratory notebooks with consecutively numbered pages. Plainly, the purpose of the procedure is to ensure the integrity and completeness of test data in this regulated industry. Instead of following the procedure, Iuorno noted her test results in a personal notebook, intending to transfer these entries to an official notebook on some future date, an express violation of rules against backdating. As a result of this conduct, Iuorno also violated a related operating procedure, requiring one chemist to provide another with transcription verification for data in their laboratory notebooks. More serious still, the first test for which Iuorno failed contemporaneously to enter data in a laboratory notebook yielded a result falling outside prescribed limits. DuPont procedures and FDA regulations required her immediately to report this fact to her supervisor. Iuorno failed to report the problem to anyone; instead, she took it upon herself to retest the samples several days later, in further violation of DuPont procedures and FDA requirements regarding retesting. It was not until the day after this retesting that Iuorno entered any data pertaining to the questioned samples in a bound laboratory notebook. When her supervisor discovered the problem and asked Iuorno for an explanation, she stated that she had been under considerable pressure to finish her test assignments expeditiously.

■ In an effort to demonstrate that DuPont's stated reason for terminating her was not these violations but rather a bias against her race, national origin, or age, Iuorno submits that similarly situated employees, who did not belong to the same protected groups as she, received more favorable treatment when questions arose about their compliance with laboratory procedures. "A showing that similarly situated employees" falling outside the protected class "received more favorable treatment can ... serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext" for unlawful discrimination, but only if the plaintiff shows that she was " 'similarly situated in all material respects' " to the individuals with whom she seeks to compare herself. *Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir.2000) (quoting *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir.1997)); *accord Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 96 (2d Cir.1999). Iuorno fails to meet this standard.

To the extent Iuorno identifies as her "comparators" three named individuals who were, in fact, terminated (a thirty-year-old white, American male; a thirty-eight-year-old Asian/Pacific Islander, Paki-

stani male; and a forty-five-year-old white, American female), we note that these individuals all worked in the Raw Materials laboratory. None was employed in the Finished Products laboratory or reported to the same supervisors as Iuorno. *See* Appellee Br. at 17; Nakashian Dep. at 72–77. Robert Dolan, the supervisor who hired and ultimately fired Iuorno, testified that he had never encountered violations of procedures in the Finished Products laboratory as serious as those committed by Iuorno. *See* Dolan Dep. at 64–65.[5] Indeed, Iuorno conceded that she was unaware of any other chemist in the Finished Products laboratory who had committed similar violations of the company's procedures and FDA regulations, let alone any who had been treated more favorably. Thus, we conclude that Iuorno's efforts to compare her termination to that of specific persons employed in other DuPont laboratory facilities cannot support an inference of pretext.[6]

██ Equally unavailing is Iuorno's attempt to demonstrate pretext by noting that DuPont failed to discipline or dismiss unidentified employees after a subsequent FDA investigation of its laboratories, including its Finished Products laboratory,

identified various problems. She submits that this disparate treatment supports an inference that race, national origin, or age were the real reasons for her termination. *See* Appellant Br. at 26. We disagree. Iuorno's argument is speculative and conclusory in suggesting that the FDA report identified any laboratory violations similarly serious to her own. As the district court correctly observed, the FDA reported various "observations" of concern with respect to DuPont laboratories, but it did not conclude that any DuPont employees had violated company operating procedures, much less FDA regulations, as Iuorno had. Indeed, the only FDA observation that pertained to the Finished Products laboratory was a recommendation—which DuPont subsequently adopted—to improve procedures for weighing samples in blend uniformity tests.

██ To the extent Iuorno points to two comments made by another one of her DuPont supervisors, Patricia Sobolewski, as evidence of the company's discriminatory motive for her termination, the argument warrants little discussion. In response to Iuorno's complaint about another chemist being from a younger generation,

---

5. As DuPont correctly observes, the facts that Dolan hired Iuorno knowing she was Filipino and in her mid-fifties and that he subsequently promoted her make it particularly difficult to infer that his subsequent decision to fire her for violations of laboratory procedures was a pretext for race, national origin, or age discrimination. *See Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir.1997).

6. Although each of Iuorno's identified "comparators" was terminated, Iuorno submits that they received more favorable treatment than she because each was given an opportunity to explain procedural violations or time to improve performance before termination. In fact, the evidence supports her claim only with respect to the thirty-year-old, white American male. But his termination not only

involved a different department, different supervisors, and a different procedural violation, it occurred four years prior to Iuorno's. *See* Steinke Aff. at ¶ 6. Thus, we cannot conclude that the circumstances were sufficiently similar in all material respects to permit a reasonable jury to draw an inference of pretext. With respect to the other "comparators," we have reviewed the evidence cited by Iuorno and find nothing in the record to support her claim that these individuals were given warnings or opportunities to improve their performance before discharge. Indeed, DuPont's Human Resources Manager has submitted a declaration expressly stating that these two employees were not afforded such consideration. *See* Steinke Decl. at ¶¶ 2–3.

Sobolewski is alleged to have remarked that Iuorno could be the chemist's mother. Such a "stray remark," without more, is insufficient to support an inference of age discrimination. *Woroski v. Nashua Corp.,* 31 F.3d 105, 109–10 (2d Cir.1994); *see also Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d at 468. Indeed, Iuorno herself characterized the remark as made "in passing when we are just [in] friendly discussions." Iuorno Dep. at 224–25. The same conclusion obtains with respect to Sobolewski's single suggestion that plaintiff consider enrolling in a free DuPont employee program to improve her English. *See Woroski v. Nashua Corp.,* 31 F.3d at 109–10. Iuorno's reliance on these remarks to establish a discriminatory motive is further undercut by the fact that Sobolewski had, in the past, nominated Iuorno for awards and recommended Iuorno to Dolan for promotion. *See Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir.1997).

In sum, because Iuorno has failed to adduce admissible evidence that would permit a reasonable jury to conclude that DuPont's stated non-discriminatory reason for terminating her was pretextual and that the real reason for her discharge was intentional discrimination based on race, national origin, or age, the judgment of the district court awarding summary judgment in favor of DuPont is hereby AFFIRMED.