Michael J. WANG, Plaintiff,

v.

STATE UNIVERSITY OF NEW YORK HEALTH SCIENCES CENTER AT STONY BROOK, Peter Glass, MB Ch. B, individually and as Chairman of the Department of Anesthesiology, Frederick Schiavone, M.D., individually and as Associate Dean for Post Graduate Medical Education, John and Jane Does, 1 through 5, Defendants.

No. 02–CV–5840(JS)ARL.

United States District Court, E.D. New York.

Feb. 23, 2006.

Michael J. Wang, pro se, South Setauket, for Plaintiff.

Toni E. Logue, Esq., NYS Attorney General's Office, Mineola, for Defendants.

*MEMORANDUM AND ORDER*

SEYBERT, District Judge.

On November 4, 2002, *pro se* Plaintiff, Michael J. Wang ("Plaintiff"), filed a Complaint in the United States District Court for the Eastern District of New York against Defendants State University of New York Health Sciences Center at Stony Brook ("SUNY"), Peter Glass ("Glass"), Frederick Schiavone, M.D. ("Dr.Schiavone"), and John and Jane Does, 1 through 5 (collectively "Defendants").

Plaintiff alleges that the Defendants discriminated against him on the basis of his race in violation of the United States and New York Constitutions, 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988, and 2000(e) and related New York laws. Plaintiff further alleges claims of intentional infliction of emotional distress, tortious interference with economic prospective advantage, and slander. Currently pending before the Court is the Defendants' motion, pursuant to Federal Rule of Civil Procedure 56, for summary judgment. For the reasons set forth below, the Defendants' summary judgment motion is GRANTED in its entirety.

*BACKGROUND*

All facts presented herein have been taken from the parties' Rule 56.1 Statements, depositions, and exhibits. Plaintiff was originally represented by counsel; and now Plaintiff appears *pro se.* Plaintiff is of Chinese descent, and he applied for SUNY's anesthesiology residency program in May 2000 after completing one year of post-graduate training in general surgery at St. Vincent's Hospital and Medical Center in New York City. (Pl.'s Rule 56.1 Counter–Statement ("Pl.'s Stmt.") ¶¶ 1, 4.) In applying to SUNY, Plaintiff provided a diploma stating he graduated from medical school in China in 1992. (Defs.' Rule 56.1 Statement ("Defs.' Stmt.") ¶ 4; Defs.' Ex. A.) The Educational Commission for Foreign Medical Graduates ("ECFMG") certified Plaintiff passed the United States Medical Licensing Examination ("USMLE") in 1998 (Defs.' Stmt. ¶ 5; Defs.' Ex. A.)

In June 2000, SUNY extended an offer to Plaintiff to be a second year resident in anesthesiology to begin in July 2000 until June 2001. (Pl.'s Stmt. ¶ 5.) SUNY verified Plaintiff's credentials on June 14, 2000. (Pl.'s Stmt. ¶ 7, Pl.'s Ex. 5.1.) Plaintiff began his residency in July 2000,

and during that time, Defendants evaluated Plaintiff's performance. (Defs.' Stmt. ¶ 8.)

During this term, Defendants advised Plaintiff to attend the first year residency lectures and take the first year residents' exam and pass by the fiftieth percentile. (Defs.' Stmt. ¶ 12.) Plaintiff refused to participate in the first year residency lectures and exam, claiming that this was discrimination. SUNY only required this of Plaintiff and SUNY placed Plaintiff and another Chinese resident on probation. (Defs.' Stmt. ¶ 12; Pl.'s Dep. 44–47.) In April of 2001, SUNY extended another offer to Plaintiff re-appointing Plaintiff as a third year resident beginning in July 2001 until June 2002. (Pl.'s Ex. 101.)

Defendants had submitted a number of evaluations for Plaintiff's second year residency, several of which were improperly dated and fourteen of which were negative. (Defs. Stmt. ¶ 8; Defs.' Ex. C.) In July 2001, SUNY's Clinical Competency Committee ("CCC") informed the American Board of Anesthesiology ("ABA") that Plaintiff's performance was "inadequate." (Defs.' Stmt. ¶ 9.) Via letter dated September 17, 2001, the ABA informed Plaintiff that it would be withholding Plaintiff's medical credits until the CCC reported Plaintiff's performance as adequate. Once Plaintiff was performing adequately, the ABA would restore Plaintiff's withheld credits. (Defs.' Stmt. ¶ 13; Pl.'s Ex. 102.)

In October 2001, Plaintiff sent letters to the homes of Dr. Glass, Department Chair, and Dr. Steinberg, Director of Residency, threatening discrimination lawsuits. (Defs.' Stmt. ¶ 14; Pl.'s Ex. 103.) Drs. Glass and Steinberg turned these letters over to SUNY's legal counsel. Legal counsel in turn referred Plaintiff's personnel file for review to Joyce Klein, Director of Medical House/Staff Services. (Defs.' Stmt. ¶ 14.)

After reviewing Plaintiff's personnel file, Klein discovered several discrepancies regarding Plaintiff's previous medical training. (Defs.' Stmt. ¶ 15.) Plaintiff had informed Defendants he graduated from medical school in China in 1992 and passed the USMLE in 1998 on the first try. But Plaintiff submitted documents to the ECFMG that indicated Plaintiff had graduated from medical school in China in 1982. ECFMG also informed SUNY that Plaintiff took the USMLE twelve times before passing. Defendants found conflicting information as to which medical school in China Plaintiff attended. Other discrepancies included incorrect dates as to where Plaintiff worked before; the Queens hospital that Plaintiff indicated he worked at had no record of Plaintiff ever working there. *Id.*

Plaintiff's own evidence contradicts itself. Plaintiff provided copies of his medical school diploma and ECFMG certificate indicating that he graduated from medical school in China in 1992 and passed the USMLE in 1998. (Pl.s' Ex. 1, 2.) But in Plaintiff's Third and Fourth Amended Rule 56.1 Counter–Statements, Plaintiff states he graduated from medical school in 1982 and passed the USMLE in 1988. (Pl.'s Stmt. ¶¶ 2–3.) To add to the confusion, Plaintiff stated in his deposition that he graduated from medical school in 1992 and passed the USMLE in 1997. (Pl.'s Dep. 61–62.)

By letter dated November 19, 2001, Dr. Schiavone and Ms. Klein met with Plaintiff and informed him that SUNY was suspending him until it could verify Plaintiff's credentials with primary sources. (Defs.' Stmt. ¶ 16.) Plaintiff refused to sign a letter of release for the primary source verification. *Id.* SUNY advised Plaintiff he had until December 4, 2001, to sign the release or he would be terminated. (Defs.Stmt.¶ 17.) Ultimately, Plaintiff did

not sign the release, and Defendants discharged Plaintiff. (Defs.' Stmt. ¶ 18.)

Plaintiff filed the instant action on November 4, 2002. Through discovery, Defendants obtained information by subpoena from Clarion University of Pennsylvania. Clarion University in Pennsylvania had transcript records that Plaintiff was attending classes there from 1988–1990 and obtained a masters degree in library science. (Defs.' Ex. 4 to Logue Aff.) This is the same time Plaintiff's exhibits indicate Plaintiff was in medical school. (Pl.'s Ex. 1) Visa information obtained from the Department of Homeland Security reveals that Plaintiff entered the country in 1988 on a student visa to attend school at Clarion University. (Defs.' Ex. 5 to Logue Aff.) In August 2004, the New York State Department of Health found that Plaintiff engaged in the fraudulent practice of medicine and prohibited Plaintiff from obtaining a license to practice medicine in New York State. (Defs.' Exs. 7–8 to Logue Aff.) On January 27, 2005, the parties attended a premotion conference before this Court in which Defendants requested permission to file a motion for summary judgment. This Court granted Defendants' request to move for summary judgment, and Plaintiff was provided with the appropriate notice for *pro se* plaintiffs opposing summary judgment in compliance with Local Rule 56.2 of the Eastern District of New York.

*DISCUSSION*

A district court may properly grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of proof is on the moving party to show that no genuine

issue of material fact exists. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994)(citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)). "[A]ll ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985)).

The court should not grant a defendant's motion for summary judgment unless "the evidence of discriminatory intent is so slight that no rational jury could find in plaintiff's favor." *Gallo*, 22 F.3d at 1225. Although the court must construe all evidence in the non-moving party's favor, a party opposing summary judgment may not rely on conclusory allegations or unsubstantiated speculation. *See Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir.2001). Rather, to defeat a motion for summary judgment, the non-moving party must show there is a " 'genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569, S.Ct. 1575, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). It is within this framework that the Court addresses the present summary judgment motion.

I. *Plaintiff Has Not Established An Inference Of Discrimination Under Title VII, Section 1981, And New York Executive Law.*

A court analyzes a discrimination claim the same way under Title VII, 42 U.S.C. § 1981 and the New York Executive Law. *Allen v. Argenbright Sec. Inc.*, 1999 WL 1129058, 1999 U.S. Dist. LEXIS 18579, at *8 (E.D.N.Y. Oct. 6, 1999). Under all three of these statutes, a plaintiff must

demonstrate the following: (1) he belongs to a protected class, (2) he was qualified for the position held and satisfactorily performed his duties, (3) he suffered an adverse employment action, and (4) this action occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in that class. *See Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000); *Allen,* 1999 WL 1129058, 1999 U.S. Dist. LEXIS 18579 at *8.

If the plaintiff makes a prima facie case of discrimination, the burden then shifts to the defendant to demonstrate a valid reason for the adverse actions. *See Tarshis,* 211 F.3d at 36. Once the defendant employer shows a valid reason for its adverse actions, the presumption of discrimination drops out, and the burden shifts back to the plaintiff to show that discrimination was the real reason for the termination. *See id.*

■ This Court grants summary judgment to Defendants with respect to Plaintiff's claims under Title VII, Section 1981, and New York Executive Law. Even assuming Plaintiff has established the first three elements, Plaintiff has not established the fourth element. Plaintiff has failed to show that any adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of his being Chinese.

Plaintiff has not provided any evidence supporting an inference of discrimination. Plaintiff claims that in or about December of 2000, Plaintiff and two other physicians of Chinese descent were placed on probation. (Pl.'s Stmt. ¶ 8.) Plaintiff also claims that SUNY communicated false information to the ABA with discriminatory intent. (Pl.'s Stmt. ¶ 13.) Plaintiff, however, does not substantiate his claims of discrimination with any evidence. In fact, nothing in the record other than Plaintiff's allegations in the Complaint support Plaintiff's claims

of discrimination. Without more, mere allegations are not enough for an inference of discrimination. *See Goenaga v. March of Dimes,* 51 F.3d 14, 18 (2d Cir.1995) (stating that a "plaintiff cannot meet his burden through reliance on unsupported assertions.").

■ Furthermore, Defendants have demonstrated with sufficient evidence that their actions were for a non-discriminatory reason. SUNY had evaluated Plaintiff as an anesthesiology resident at SUNY. (Defs.' Ex. C.) Plaintiff's poor performance as a resident is what prompted Defendants to advise Plaintiff to participate in the first year lectures and exams. Plaintiff's negative evaluations is also what prompted SUNY to inform the ABA of Plaintiff's inadequate work performance. The ABA indicated that the credits would be withheld until Plaintiff had an adequate evaluation. At which point in time, all the withheld credits would be restored to Plaintiff. None of this indicates that Defendants acted with discriminatory intent. If anything, it indicates that Defendants were giving Plaintiff chances and ways to improve his performance which Plaintiff rejected. (Defs.' Exs. 2, 4, 5, Pl.'s Dep. 5:16–17, 62:5–15, Pl.'s Stmt. ¶ 2, Pl.'s Ex. 1.)

Furthermore, in April 2001, Drs. Schiavone and Glass extended a third year residency position to Plaintiff. Being that Drs. Schiavone and Glass hired Plaintiff, the Court is hard-pressed to infer those same Defendants fired Plaintiff for discrimination. *See Allen,* 1999 WL 1129058, 1999 U.S. Dist. LEXIS 18579 at *13–*14 ("When the same person or persons are responsible for hiring and firing, a strong inference exists that discrimination was not a determining factor for adverse action taken by the employer.") (internal quotations omitted) (quoting *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir. 1997)).

Therefore, the Court can strongly infer that discrimination was not a determining factor for any alleged adverse action taken. *See id.* Plaintiff has not submitted sufficient evidence from which a rational fact finder could infer that more likely than not Plaintiff was the victim of intentional race and national origin discrimination. Nor has Plaintiff provided evidence that Defendants' non-discriminatory reason for their actions was mere pre-text and the real reason for termination was discrimination. Accordingly, this Court grants summary judgment to the Defendants as to Plaintiff's claims under Title VII, Section 1981, and New York Executive Law.

## II. *Plaintiff Has Not Established A Claim For Retaliation.*

■ To establish a prima facie case of retaliation, a plaintiff must show that (1) the plaintiff was engaged in a protected activity, (2) the defendant employer was aware of plaintiff's participation in the protected activity, (3) the plaintiff suffered an adverse employment action, and (4) there was a causal connection between the plaintiff's protected activity and the adverse action taken by the defendant employer. *See Allen v. St. Cabrini Nursing Home, Inc.*, 198 F.Supp.2d 442, 448 (S.D.N.Y. 2002). The requisite causal connection may be established by "showing that the retaliatory action was close in time to the protected activities; that other similarly situated employees were treated differently; or by offering direct proof of retaliatory animus." *Id.* at 450.

■ The burden-shifting analysis utilized in discrimination claims is used when evaluating retaliation claims. *See Davis v. State Univ. of N.Y.*, 802 F.2d 638, 642 (2d Cir.1986). Plaintiff must satisfy his initial burden that retaliation played a role in the adverse action taken by the defendant employer. Then the burden shifts to the defendant to proffer a non-retaliatory reason for the adverse action. *See id.* "Once the employer establishes a legitimate, non-discriminatory motive, the presumption of retaliation drops from the case and the employee must demonstrate that the stated reasons were pretextual." *Id.* An employee's "mere conclusory allegations" do not establish that a defendant employer's non-discriminatory reasons were just pretextual to any retaliatory animus. *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) ("[A] plaintiff must provide more than mere conclusory allegations of discrimination to defeat a motion for summary judgment.").

■ Defendants do not dispute the first three elements of Plaintiff's retaliation claim. Defendants argue, however, that no causal link exists between Plaintiff's letter threatening discrimination lawsuits and his ultimate discharge. Defendants discharged Plaintiff solely because it was unclear whether Plaintiff actually had the medical experience required to be a resident at SUNY and because Plaintiff refused to authorize SUNY to conduct a primary source verification check of Plaintiff's medical credentials.

■ Even if the Court finds that Plaintiff established a question of fact as to why Defendants discharged him, Defendants have met their burden and proffered several non-discriminatory legitimate reasons for discharging Plaintiff. Defendants demonstrated that serious questions went to Plaintiff's qualifications as a doctor. Furthermore, no one could verify when exactly Plaintiff graduated from medical school, if at all, because Plaintiff refused to authorize a primary source verification of his credentials. Defendants had to fire Plaintiff anyway despite threats of a lawsuit simply because they could not verify whether Plaintiff was in fact a doctor.

Aside from the discrepancies surrounding Plaintiff's medical background and

Plaintiff's refusal to authorize SUNY to verify his medical background, Defendants also presented evidence that Plaintiff had misrepresented to Defendants where he worked after graduating from medical school, what score he received on the USMLE, and the number of times it took Plaintiff to pass the USMLE. Second, Plaintiff's work evaluations were less than satisfactory. Finally, Plaintiff refused to participate in remedial programs that would assist and improve his work performance.

Based on the above-stated legitimate and nondiscriminatory reasons for Plaintiff's discharge, the presumption of retaliation thus falls out. Now the burden shifts to Plaintiff to show that Defendants' reasons were pre-textual and the real reason for Plaintiff's discharge was retaliation. Plaintiff fails to meet this burden. Plaintiff does not provide any evidence to establish Defendants' reasons were mere pretext. The only evidence that Plaintiff provides contradicts itself: Plaintiff's Fourth Amended Rule 56.1 Statement indicate he graduated from medical school in 1982 and passed the USMLE in 1988 yet his exhibits indicate a graduation date of 1992 and his passing the USMLE in 1998. This evidence along with Plaintiff's mere conclusory allegations are simply not enough to establish that Defendants' reasons for discharge were mere pre-text. Simply put, Plaintiff has not provided any evidence from which a juror or this Court can infer that Defendants' proffered reasons for Plaintiff's discharge were pre-textual to Defendants' alleged retaliatory animus. For these reasons, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's retaliation claim.

III. *Immunity Bars The Section 1983 Claims Against SUNY And The Individual Defendants.*

■ To state a claim under Section 1983, a plaintiff must show that a person, acting under color of state law, deprived plaintiff of a federal statutory or constitutional right. *See Eagleston v. Guido,* 41 F.3d 865, 876 (2d Cir.1994). Generally, however, when a state is a named defendant in a Section 1983 action, the Eleventh Amendment protects it from suit. *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.,* 306 F.3d 87, 94–95 (2d Cir. 2002); *Dube v. State Univ. of N.Y.,* 900 F.2d 587, 594–95 (2d Cir.1990). The Eleventh Amendment also cloaks with immunity those state officials acting in their official capacities to the extent that a plaintiff sues for money damages. *See Dube,* 900 F.2d at 595. A plaintiff, however, can sue state officials in their official capacities for prospective injunctive relief, such as reinstatement. *See id.* But "[a] federal court's grant of injunctive relief against a state official may *not* be based on violations of state law." *Id.*

■ This Court grants Defendants' motion for summary judgment as to Plaintiff's Section 1983 claims against SUNY and Drs. Schiavone and Glass in their official capacities. SUNY is an "integral part of the State [of New York] and when it is sued the State is the real party." *Falu v. State Univ. of N.Y.,* 1991 U.S. Dist. LEXIS 15482, *64–*65 (E.D.N.Y. Sept. 13, 1991) (citations omitted). SUNY has not consented to suit. *See id.* at *65. Also, the state is the real party being sued when individual defendants are sued in their official capacity. *See id.* The Court has found that Plaintiff's federal claims are not viable. Accordingly, the Court cannot allow Plaintiff's claim for reinstatement to proceed on state law claims. Thus, Eleventh Amendment immunity bars Plaintiff's Section 1983 claim against SUNY and the individual Defendants inasmuch as they are being sued in their official capacities.

■ Qualified immunity bars Plaintiff's action against Drs. Schiavone and Glass in their individual capacities. Qualified immunity "shields government officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Prue v. Syracuse*, 26 F.3d 14, 17 (2d Cir.1994) quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A state official is entitled to qualified immunity if (1) his or her conduct did not violate clearly established rights of which a reasonable person would have known or (2) it was objectively reasonable for the state official to believe that his or her acts did not violate clearly established rights. *See id.* (citations omitted).

■ The Court finds that Drs. Schiavone and Glass are entitled to qualified immunity. It was objectively reasonable for Drs. Schiavone and Glass to believe that their acts did not violate any clearly established rights of Plaintiff. The evidence does not support an inference of retaliation or discrimination. Accordingly, Defendants' motion for summary judgment as to Drs. Schiavone and Glass in their individual capacities is GRANTED.

## IV. Plaintiff Has Not Established A Conspiracy As Required Under Sections 1985 And 1986.

■ Plaintiff also brings suit against Defendants under 42 U.S.C. §§ 1985 and 1986. Section 1985 prohibits "two or more persons [to] conspire ... for the purpose of depriving, either directly or indirectly,

any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985. A conspiracy, however, does not exist if the "conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." *Herrmann v. Moore*, 576 F.2d 453, 459 (2d. Cir.1978).

■ SUNY, acting with its employees, Drs. Schiavone and Glass, is not conspiring with its employees because all of them are part of one corporation—the school. *See id.* (holding that a school and its employees is not a conspiracy under 42 U.S.C. § 1985). Because this Court finds no conspiracy exists, the Court declines to address the parties' other arguments in this regard. Thus, summary judgment is granted as to Plaintiff's Section 1985 claims. Because Section 1986 claims are contingent upon a valid Section 1985 claim, the Court also grants Defendants' motion for summary judgment on Plaintiff's Section 1986 claim. *See Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir.1996) (dismissing Section 1986 claims because they are contingent upon valid Section 1985 claims).

## V. The Court Grants Summary Judgment To Defendants On All State Law Claims.[1]

### A. Defendants Did Not Act Outrageously For A Claim Of Intentional Infliction Of Emotional Distress.

■ Plaintiff asserted a claim for intentional infliction of emotional distress in

---

1. The Court notes that Plaintiff argues a breach of contract claim in his opposition papers to Defendants' summary judgment motion. But this claim was not contained in Plaintiff's complaint. In light of the fact that the Court dismisses all of Plaintiff's federal claims, a breach of contract claim would not properly be brought before this Court. Therefore, the Court will not address this claim in this Order.

relation to Defendants' alleged discrimination. For a claim of intentional infliction of emotional distress, New York law requires a plaintiff to show (1) outrageous and extreme conduct on the part of the defendant, (2) intent, (3) causal connection between the conduct and injury, and (4) severe emotional distress. *See Lydeatte v. Bronx Overall Econ. Dev. Corp.*, 2001 WL 180055, 2001 U.S. Dist. LEXIS 1670, at *3 (S.D.N.Y. Feb. 21, 2001). A defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at *3–*4.

█ In the employment context, New York courts rarely entertain claims of intentional infliction of emotional distress because of the fear that plaintiffs will attempt to re-cast their discharge complaints as something else. *See id.* at *4. Thus, on a motion for summary judgment in an employment context, a plaintiff must proffer some evidence that an employer's conduct was so "egregious, utterly despicable, heartless, or flagrant." *Id.* at *6.

In this case, Plaintiff has not shown through allegations or solid evidence that the Defendants acted in any egregious, utterly despicable, or heartless manner. What Plaintiff did show was that Plaintiff was placed on probation during his term as a SUNY anesthesiology resident and that SUNY ultimately terminated his employment. Whatever Plaintiff claims is Defendants' underlying reason for their actions, Defendants' conduct certainly does not rise to the level of outrageous conduct necessary for a claim of intentional infliction of emotional distress. For this reason, the Court grants Defendants' motion for summary judgment on Plaintiff's claim of intentional infliction of emotional distress.

## B. *Plaintiff Did Not Have An Existing Business Relationship For A Claim Of Tortious Interference With Prospective Economic Advantage.*

█ This Court grants summary judgment to Defendants for Plaintiff's claim of tortious interference with prospective economic advantage. In New York, a claim for tortious interference with prospective economic advantage requires a plaintiff to show the following: (1) "the plaintiff had business relations with a third party," (2) the defendant "interfered with those business relations," (3) the defendant "acted for a wrongful purpose or used dishonest, unfair, or improper means," and (4) the defendant's "acts injured the relationship." *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir.2002). In this case, Plaintiff fails to show he had a business relationship with a third party.

To meet the first element of the claim, Plaintiff must establish that he had a business relationship with a third party. *See id.* This requires a plaintiff to "specify some particular, existing business relationship through which plaintiff would have done business but for the allegedly tortious conduct." *Astor Holdings, Inc. v. Edward "Trey" Roski, III*, 2002 WL 72936, 2002 U.S. Dist. LEXIS 758, at *60 (S.D.N.Y. Jan. 15, 2002) (citations omitted). It is not enough for a plaintiff to show he had a "mere possibility of . . . future relationship[s]." *Id.*

█ In this case, Plaintiff has not set forth evidence specifying any particular and existing business relationship through which Plaintiff would have done business but for Defendants' allegedly tortious conduct. At most, Plaintiff has established he lost the possibility of future business relationships. Plaintiff had applied to other residency training programs. Plaintiff sent out "more than one hundred job appli-

cations to the whole country." (Pl.'s Stmt. ¶ C.2.) But Plaintiff did not specify which residency training programs he applied to nor did Plaintiff maintain a then-existing relationship with any specific residency program prior to any alleged misconduct on Defendants' part.

Furthermore, Plaintiff provided no evidence of his applying to these other programs. Plaintiff merely established, by his statements alone, that he had applied for residency positions. All this shows is that Plaintiff had a mere possibility of being hired as a resident in some other program in the future. This amounts to a mere possibility of future relationships and is not enough to establish an existing business relationship or a claim for intentional interference with prospective economic advantage. Because the Plaintiff has not established an existing business relationship, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's claim for intentional interference with prospective economic advantage.

C. *Opinion Of An Employee's Work Performance Is Not Actionable In A Defamation, Libel, Or Slander Claim.*

■ This Court grants Defendants' motion for summary judgment as to Plaintiff's slander, defamation, and libel claims. For a plaintiff to survive a motion for summary judgment on a slander, defamation, or libel claim, a plaintiff must provide evidence that supports the following: (1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence in the unprivileged publication, and (4) the statement must be defamatory *per se* or have caused special harm. *See Hawkins v. City of N.Y.*, 2005 U.S. Dist. LEXIS 15898, at *49–*50 (S.D.N.Y. Aug. 8, 2005)

(citing RESTATEMENT (SECOND) OF TORTS § 558).

■ Under New York law, an employer is free to criticize an employee's work performance "without judicial interference." *Ott v. Automatic Connector*, 193 A.D.2d 657, 598 N.Y.S.2d 10, 11 (N.Y.App. Div.1993) (citations omitted). An employer's evaluation of its employees is mere opinion. Opinion is protected speech, and thus, work evaluations are protected speech. *See Hawkins v. City of N.Y.*, 2005 U.S. Dist. LEXIS 15898, at *50–*51 (S.D.N.Y. Aug. 8, 2005) (citations omitted). Furthermore, this communication is privileged because the communication is about an employee in an employment context between two employers that have a common interest. *See id.* at *52.

Plaintiff claims that Defendants provided false information to the ABA that Plaintiff's clinical competence was unsatisfactory. Plaintiff also claims that SUNY falsely informed other residency training programs as to Plaintiff's credentials and fitness for a residency position. Plaintiff alleges this false information is why Plaintiff was denied the other residency positions.

■ But SUNY's communications to the ABA and other residency training programs are protected speech. SUNY had informed the ABA and residency programs of Plaintiff's inadequate performance as an anesthesiology resident at SUNY. This type of information is an employer's opinion of its employees' performance. Furthermore, this communication took place between two entities with a common interest: to have well-qualified medical residents practicing medicine. Such communication, therefore, is privileged. For these reasons, the Court grants Defendants' motion for summary judgment as to Plaintiff's defamation, libel, and slander claims. The Court notes that

Defendants brought forth an argument based on statute of limitations, but in light of the Court's reasoning stated above, the Court will not address this argument.

## CONCLUSION

For all of the reasons set forth herein, this Court GRANTS Defendants' summary judgment motion in its entirety.

SO ORDERED.